IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**DANA HARRISON,** *et al.*                                                    **PLAINTIFFS**

**V.**                         **NO. 3:18-CV-00214-ERE**

**BRODIE FAUGHN,** *et al.*                                                **DEFENDANTS**

## OPINION AND ORDER

Pending before the Court[1] is Defendants' motion for reconsideration and supporting brief (*Docs. 129, 130*), asking the Court to revisit its rulings on the issues of municipal liability and bifurcation. Plaintiffs have filed a response in opposition (*Doc. 131*), and the motion is ripe for review.

After careful consideration, and for reasons that follow, the motion for reconsideration is granted as to the issue of municipal liability. All official-capacity claims, which are claims against the City, are dismissed with prejudice because the City is entitled to summary judgment. With respect to the three remaining claims involving three separate, unrelated incidents, the Court believes separate trials or phases are likely necessary to avoid undue prejudice but seeks the parties' input before making a final decision.

---

[1] The parties previously consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 39.*

I.  Background

On November 8, 2018, multiple plaintiffs filed this lawsuit under 42 U.S.C. § 1983, alleging that Defendant Brodie Faughn, a Wynne, Arkansas police officer, violated their Fourth Amendment rights related to a traffic stop or arrest. *Doc. 1*. Some Plaintiffs also brought claims against Wynne police officer Brittany Eskridge. In addition, each Plaintiff sued Wynne Police Chief Jeff Sanders, Wynne Mayor Robert Stacy, and members of the Wynne City Council, alleging that each of these defendants ignored multiple complaints about Officer Faughn's conduct, thus contributing to their injuries.

Plaintiffs sued each defendant in his or her individual and official capacities, and redundant to the official-capacity claims, they also named the City of Wynne as a defendant. *See Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (noting that "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.").

The parties and claims have narrowed since 2018. Four Plaintiffs voluntarily dismissed their claims without prejudice (*Docs. 76,77*), and all Plaintiffs voluntarily dismissed individual-capacity claims against city council members (*Docs. 36, 38*). On July 15, 2020, Defendants filed a joint motion for summary judgment, asserting among other things that the individual Defendants were entitled to qualified

immunity and that Plaintiffs lacked evidence to support their claims against the City. *Doc. 69 at 31-42*.

On March 3, 2021, the Court granted summary judgment in favor of Officer Faughn as to several Plaintiffs' individual-capacity claims but found: "With so many facts remaining in dispute, the Court cannot decide questions of qualified immunity or municipal liability at this stage of the litigation." *Doc. 100 at 14*.

On March 24, 2021, Defendants Faughn, Sanders, and Stacy filed notice of interlocutory appeal regarding qualified immunity. *Doc. 107*. While the appeal was still pending, Defendants Sanders and Stacy filed a motion in this Court requesting a specific ruling as to their assertion of qualified immunity. *Docs. 110, 111*. On May 25, 2021, the Court granted that motion, stating: "Because questions of fact remain about their knowledge of officer misconduct, Defendants Sanders and Stacy are not entitled to qualified immunity. Likewise, disputed facts remain regarding municipal liability." [2] *Doc. 120 at 2*.

In a July 1, 2022 opinion, the Eighth Circuit held that: (1) officer Faughn was entitled to qualified immunity as to individual capacity claims by James O'Hara and Christa Hess (*Doc. 124 at 8-10*); and (2) Chief Sanders and Mayor Stacy were

---

[2] On May 28, 2021, following Magistrate Judge Beth Deere's retirement, this case was reassigned to the undersigned Magistrate Judge.

3

entitled to qualified immunity as to all individual capacity claims against them. *Doc. 124 at 10-11*.

Plaintiffs sought to hold Chief Sanders and Mayor Stacy individually liable for Officer Faughn's alleged unconstitutional actions, alleging that both officials had received notice of Officer Faughn's behavior but failed to stop it. *Id. at 10*. The Eighth Circuit noted that Chief Sanders and Mayor Stacy could be liable in their supervisory capacities only if: (1) they had notice of a pattern of unconstitutional acts committed by Officer Faughn; (2) were deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; and (4) proximately caused Plaintiffs' injuries. *Id*. (quoting *Livers v. Schenk*, 700 F.3d 340, 355 (8th Circ. 2012). The Court of Appeals held that even assuming Chief Sanders and Mayor Stacy knew about the citizen complaints against Officer Faughn, Plaintiffs failed to present evidence that either official subjectively knew of and deliberately disregarded a substantial risk of unconstitutional harm posed by Officer Faughn. *Id. at 11*.

On July 6, 2022, the Court dismissed claims according to the Eighth Circuit's mandate, issued July 1, 2022 (*Doc. 126*), and directed the parties to file a joint status report specifying the remaining claims. *Doc. 128*. The parties filed a joint status report agreeing that the following claims remain: (1) Dana Harrison's unlawful search claim against Officer Eskridge; (2) Shane Willard's unlawful seizure claim

4

against Officer Faughn; (3) Alvin Miller's unlawful stop and arrest claim against Officer Faughn and (4) Plaintiffs' claims against the City. *Doc. 135 at 2*.

## II. Motion for Reconsideration of Municipal Liability

The City argues that there are no genuine issues for trial as to municipal liability and asks the Court to reconsider the earlier decision denying summary judgment. *Docs. 129, 130*. Considering the Eighth Circuit's conclusion that "no evidence in the record supports a finding that either Sanders or Stacy subjectively knew of and deliberately disregarded a substantial risk of unconstitutional harms posed by Faughn," the Court agrees. *Doc. 124 at 11*.

In deciding Defendants' motion, the Court is mindful that under the law of the case doctrine, "when a case has been decided by an appellate court and remanded for further proceedings, every question decided by the appellate court, whether expressly or by necessary implication, is finally settled and determined, and the court on remand is bound by the decree and must carry it to execution . . . . " *Thompson v. C.I.R.*, 821 F.3d 1008, 1011 (8th Cir. 2016) (citing *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 784-85 (8th Cir.1996)).

### A. Municipal Liability Under § 1983

Just as Chief Sanders and Mayor Stacy could not be held liable in their individual capacities based on their status as supervisors, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality

cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original). Section 1983 liability is imposed against a municipality only where a constitutional violation resulted from: (1) an "action pursuant to official municipal policy" or (2) misconduct so pervasive among non-policymaking employees of the municipality "as to constitute a 'custom or usage' with the force of law." *Mitchell v. Kirchmeier*, 28 F.4th 888, 899 (8th Cir. 2022) (quoting *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998)). Municipal policies and practices that may give rise to § 1983 liability include deliberately indifferent training or supervision of employees. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); see also *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013). Regardless of the policy or practice at issue, a plaintiff must show that it was the "moving force [behind] he constitutional violation." *Monell*, 436 U.S. at 694; *see also Board of Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) ("The plaintiff must . . . demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.").

B. **Summary Judgment Record**

Plaintiffs have acknowledged they do not claim that a written municipal policy is to blame for their alleged injuries. *Doc. 80 at 8*. Instead, they contend that their injuries resulted from the City's custom of ignoring citizen complaints about

Officer Faughn. *Id.*; see also *Doc. 26 at 3*. In their second amended complaint, Plaintiffs alleged that despite knowledge of Officer Faughn's misconduct, "all the Defendants who [were] municipal decision makers . . . stood silent and allowed Faughn and Eskridge[3] to run amok as their own tag team vigilante force within the city." *Id.*

In moving for summary judgment, the City presented evidence that Chief Sanders believed that citizen complaints against Officer Faughn had been investigated and determined to be without merit. *Doc. 68-4 at 14-16* (Sanders Dep.). The City's evidence also included the affidavits of William Colvin and Jeff Stewart, former Wynne police lieutenants who were responsible for investigating citizen complaints during the relevant period. *Id. at 21-22* (Colvin Aff.), *23-24* (Stewart Aff.). The former officers stated that after they investigated a complaint, which included reviewing any available body camera footage, they would report their

---

[3] Dana Harrison is the only plaintiff with a claim against Officer Brittany Eskridge. She alleges that on December 6, 2017, Officer Eskridge subjected her to an intrusive, public body search in violation of the Fourth Amendment. *Doc. 26 at 6-7*. Ms. Harrison has produced *no* evidence that City officials ignored citizen complaints regarding misconduct committed by Officer Eskridge before December 6, 2017.

The record includes a single citizen complaint against Defendant Eskridge, the one Ms. Harrison submitted two days after the December 6 incident, complaining that Officer Faughn stopped her car for false reasons and accused her of using drugs, and a "lady officer" on the scene performed an intrusive body search. *Doc. 79-9 at 22-23*; see also footnote 4, *infra*, summarizing all citizen complaints relied upon by Plaintiffs.

In conclusion, there is simply no evidence that the City's failure to remedy a known pattern of misconduct by Officer Eskridge was the moving force behind the alleged unreasonable search of Ms. Harrison's person on December 6, 2017.

findings to Chief Sanders. The City also offered evidence that Mayor Stacy received "a couple" of complaints concerning Officer Faughn, and he reviewed body camera footage related to one complaint; however, his normal practice was to refer citizen complaints about police conduct to Chief Sanders. *Doc. 68-4 at 19* (Stacy Dep.).

In opposition to summary judgment, Plaintiffs presented copies of citizen complaints against Officer Faughn (*Doc. 79-7*),[4] which attorney Carter Dooley had presented to city council members and Mayor Stacy, who then forwarded the complaints to Chief Sanders. *Doc. 80 at 8*. Plaintiffs also provided the transcript of

---

[4] The following is a brief summary of the citizen complaints provided by Plaintiffs: (1) complaint by non-party Katelyn Williams, dated September 5, 2017, stating that Officer Faughn arrested her for DUI and pulled her out of her car, causing her to reinjure and dislocate her shoulder (*Doc. 79-7 at 1-6*); (2) complaint by non-party Kenneth W. Nettles, dated January 15, 2018, stating that he was only chewing gum while working as a truck driver, when Officer Faughn arrested him for trying to chew and swallow drugs, twisted his arm, and caused him to lose his job (*Id. at 7-9*); (3) complaint by non-party Janet Partain, dated September 22, 2017, stating that Officer Faughn played "peek-a-boo" with students in a special education class (*Id. at 10*); (4) complaint by former Plaintiff, Stephanie Sturgeon, dated November 20, 2017, stating that after she declined Officer Faughn's request for a date, he harassed her and stopped her car multiple times (*Id. at 12-17*); (5) complaint by non-party Candy McCoy Hunt, dated July 26, 2017, stating that Officer Faughn stopped her car, asked if she had been drinking, and gave her a ticket (*Id. 18-19*); (6) complaint by non-party Veronica Blake, dated September 20, 2017, stating that Officer Faughn arrested her for DUI, which caused her to lose her job and get a divorce (Id. at 20-21); (7) complaint by Plaintiff Dana Harrison, dated December 8, 2017, stating that on December 6, 2017, Officer Faughn stopped her car for false reasons and accused her of using drugs, a "lady officer" on the scene (Defendant Brittany Eskridge) performed an intrusive body search, and Officer Faughn confiscated hydrocodone pills from her purse (*Id. 22-23*); (8) complaint by non-party Alanna Johnson, dated November 9, 2017, stating that Officer Faughn approached her, with her daughter present, and falsely accused her of having improper car seats and threatened that he would pull her over again and send her children to DHS (*Id. at 24-25*); (9) complaint by former Plaintiff Chrissy Duncan, dated September 26, 2016, stating that Officer Faughn stopped her that day for improper tags and was abusive to her and her daughter (*Id. at 26-27*); (10) complaint by former Plaintiff Chrissy Duncan, dated October 7, 2016, stating that Officer Faughn refused to change her court date (*Id. at 28-29*); (10) complaint by former Plaintiff Whitney Tracy, listing multiple grievances concerning a traffic stop by Officer Faughn which resulted in her arrest. *Id. at 30-47*.

Mayor Stacy's April 19, 2018 deposition in a separate, state court case filed against Officer Faughn. *Doc. 79-9*. There, Mayor Stacy acknowledged that Mr. Dooley had provided him and city council members with written complaints against Officer Faughn. *Id. at 10-12*. In addition, Mayor Stacy explained that he referred citizen complaints about police officers to Chief Sanders. *Id. at 17-18*.

### C.     Analysis

"Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); see also *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989) (stating it is necessary to identify "those officials or governmental bodies who speak with final policymaking authority for the [City] concerning the action alleged to have caused the particular constitutional . . . violation at issue."). Given Plaintiffs' allegation that the City had a custom of ignoring citizen complaints about Officer Faughn and that "all decisionmakers" allowed him to "run amok," it is necessary to determine the City's final decisionmaker or policymaker with respect to officer personnel actions such as training, supervision, and discipline.  It is for the Court, not a jury, to make this determination by consulting: "(1) 'state and local positive law' and (2) 'state and local 'custom or usage' having the force of law.'" *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1215 (8th Cir. 2013) (quoting *Jett*, 491 U.S. at 737). "This

question of law must be answered before determining whether there are genuinely disputed material facts as to whether a policy or custom resulted in the predicate constitutional violation." *Long v. Smith*, No. 2:19-cv-00061-LPR, ECF No. 81 at 36, 2022 WL 906352 at *20 (E.D. Ark. March 28, 2022).

Wynne, Arkansas qualifies as a city of the first class under Arkansas law. See Ark. Code Ann. § 14-37-103(a)(1) (stating that "municipal corporations having over two thousand five hundred (2,500) inhabitants shall be deemed cities of the first class"); https://www.census.gov/quickfacts/wynnecityarkansas (showing population estimate for Wynne, Arkansas at 8,275) (last visited July 22, 2022). Arkansas law charges the governing body of a city of the first class, here the city council, with establishing a police department and providing it the proper means and resources to carry out law enforcement services to citizens. See Ark. Code Ann. 14-52-101(a). However, state law provides that "the duty of the chief of police and other officers of the police department is under the direction of the mayor." Ark. Code Ann. § 14-52-203(a).

Arkansas law also charges the chief of police with executing "all process directed to him by the mayor[,]" and provides that the police chief may appoint deputies and is responsible for the acts of the deputies. Ark. Code Ann. § 14-52-202(a). These statutory provisions make clear that Mayor Stacy and Chief Sanders, not the city council, are charged with the day-to-day supervision of a police

department and serve as policy-making officials over personnel decisions regarding police officers.

The Court now turns to whether issues for trial remain as to actions on the part of Mayor Stacy or Chief Sanders. In the absence of a facially unconstitutional municipal policy, where "it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers." *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 390 (8th Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Whether the theory of liability is based on an unofficial custom or practice or a failure to train or supervise, a plaintiff must demonstrate that the municipal action at issue was taken with deliberate indifference as to its known or obvious consequences. *Id*. (applying the deliberate indifference standard of fault where plaintiff claimed that city's failure to train resulted in the use of excessive force); *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (noting that municipal liability based on an unwritten or unofficial policy requires proof that policymaking officials demonstrated deliberate indifference to a continuing, widespread, persistent pattern of unconstitutional misconduct by government employees).

Even assuming a pervasive pattern of unconstitutional conduct by Officer Faughn, the Eighth Circuit's conclusion that "no evidence in the record supports a finding that either Sanders or Stacy subjectively knew of and deliberately disregarded a substantial risk of unconstitutional harms posed by Faughn" (*Doc. 124 at 11*) is fatal to Plaintiffs' claim against the City.[5]

### III.   Motion for Reconsideration-Bifurcation of Trial

On May 25, 2021, the Court denied Defendants' motion to bifurcate, asking the Court to hold a separate trial for each Plaintiff's claim(s). *Docs. 112, 120*. Defendants now ask the Court to reconsider that ruling and "hold a separate trial for each Plaintiff against the appropriate Defendant." *Doc. 130 at 5*. Alternatively,

---

[5] In opposition to the City's motion for reconsideration, Plaintiffs argue that they have presented "sufficient facts to present a jury question as to whether the mayor and police chief were derelict in their duties to supervise the officers." *Doc. 131 at 1*. According to Plaintiffs, a jury should decide whether:  (1) Mayor Stacy should have "taken the matter" before the city council; (2) Chief Sanders should have permitted an "underling" to decide whether complaints against Officer Faughn were valid; (3) citizen complainants should have been permitted to voice their concerns in person; and (4) city officials held any bias against the complainants. *Id. at 2*.

Deliberate indifference is the "standard of culpability sufficient to identify a dereliction as reflective of municipal policy and to sustain a claim of municipal liability for failure to train [or supervise] an employee who causes harm by unconstitutional conduct for which he would be individually liable." *Sacramento v. Lewis*, 523 U.S. 833, 850 n.10 (1998) (citing *Canton v. Harris*, 489 U.S. 378, 388–389 (1989)).  Here, the Eighth Circuit concluded that Plaintiffs failed to present evidence to create material issues of fact regarding deliberate indifference on the part of Mayor Stacy or Chief Sanders, specifically stating that "no evidence in the record supports a finding that either Chief Sanders or Mayor Stacy subjectively knew of and deliberately disregarded a substantial risk of unconstitutional harms posed by Faughn . . . . " *Doc. 124 at 11*. The Eighth Circuit's determination stands as the law of this case and forecloses Plaintiffs' official capacity claims against Wynne's mayor and chief of police, as well as the claim against the City of Wynne.

Defendants ask the Court to try Plaintiff Harrison's illegal search claim against Officer Eskridge separate from Plaintiff Willard's and Plaintiff Miller's unlawful stop and arrest claims against Officer Faughn. *Id.* Defendants argue: "Defendant Eskridge would be greatly prejudiced by having her case tried at the same time as unrelated claims against a different Defendant by different Plaintiffs." *Doc. 130 at 5*.

When multiple plaintiffs and/or defendants are permissively joined in one action, "[t]he court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against that party." Fed. R. Civ. P. 20(b). In addition, Rule 42(b) provides that for convenience, to avoid prejudice, or when separate trials would be conducive to expedition and economy, a court may order a separate trial of any claim or issue in a case.

With the dismissal of Plaintiffs' claims against the City and Plaintiff Harrison's claims against Officer Faughn, the remaining claims no longer present common questions of fact or law such that judicial economy would be served by trying them together. Additionally, there is a strong argument that *both* Defendant Faughn and Eskridge will suffer prejudice if Plaintiffs' separate claims are tried to the same jury at one time. The Court is considering selecting two juries and trying

the remaining claims in three separate phases.[6] The Court invites the parties to comment on this proposal or to offer an alternative plan for fairly and efficiently resolving the remaining claims.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' motion for reconsideration (*Doc. 129*) is GRANTED IN PART AND DENIED IN PART.  The Court grants summary judgment in favor of the City of Wynne, Arkansas, and all official capacity claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the parties have up to and including ***Friday, August 5, 2022*** to file objections or an alternative to the Court's proposal.

Dated this 27th day of July, 2022.

*[signature]*
_____
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court envisions selecting two juries. The first jury would decide, separately, the claim against Officer Eskridge and one of the claims against Officer Faughn. The second jury would decide the other claim against Officer Faughn.